IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE CO., *et al.*, <br><br> Plaintiffs, <br> v. <br><br> PENNSAUKEN SPINE AND REHAB P.C., *et al.*, <br><br> Defendants. | Civil No. 17-11727 (RBK/KMW) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the motion for default judgment (ECF No. 25) of Plaintiffs GEICO Casualty Company, GEICO General Insurance Company, and GEICO Indemnity Company against Defendants Delaware Valley Physical Medicine Associates, P.C. and Eric Lipnack. Defendants have also moved to vacate the clerk's entry of default. (ECF No. 33.) For the reasons set forth below, Plaintiffs' motion for default judgment is **DENIED** and Defendants' motion to vacate the clerk's entry of default is **GRANTED**.

I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are Maryland corporations whose principal places of business are in Chevy Chase, Maryland and are authorized to issue automobile insurance policies in New Jersey. (Compl. at 5.) Defendant Delaware Valley Physical Medicine Associates, P.C. ("Delaware Valley") is a professional medical corporation with its principal place of business in New Jersey. Defendant Delaware Valley was owned and controlled by Defendant Lipnack, who currently resides in and

1

is a citizen of Florida. (*Id*.) Defendant Lipnack was licensed to practice medicine in New Jersey through 2015, at which point his license expired. (*Id*.)

Plaintiffs' complaint is expansive: at 279 pages in length and with numerous defendants, many of whom have been dismissed from the case, it defies easy summarization (and, as we'll see, faces some procedural defects which only add to this difficulty). But the following points appear to be at issue.

Defendants provided medical care to persons injured in automobile accidents. After treating their patients, they would then charge Plaintiffs for reimbursement of any expenditures related to their care. (*Id*. at 111.) Plaintiffs assert that Defendants engaged in illegal *quid pro quo* relationships with other doctors and health clinics around the state and paid these third parties for each referral. (*Id*. at 256.) Defendant Lipnack, it is alleged, would often refer patients to facilities in which he had an ownership interest. (*Id.* at 204–10.) After making these referrals—both self-referrals and tit-for-tat referrals—Defendants would perform unnecessary and illusory procedures and practices for injuries that, in Plaintiffs' view, were not serious enough to warrant the treatment they received. (*Id*. at 144.) Plaintiffs allege Defendants never administered the procedures and practices for which they charged Plaintiffs, choosing instead to charge for the procedures and then pocket the money. (Pl. Br. at 12.) Plaintiffs also allege that Defendants knowingly performed these medically unnecessary procedures, when they were performed at all. They also charge that Defendants sought reimbursements above and beyond the cost of providing care through devices such as "unbundling"—separating and charging the same procedure multiple times under different billing codes—and fraudulent billing. (*Id*.; *see also* Compl. at 195, 252.)

Plaintiffs bring several claims. First, they contend that Defendants were not in compliance with the New Jersey Insurance Fraud Prevention Act ("NJIFPA") because Defendants would

2

routinely engage in "illegal referral and self-referral"; purport to provide and bill for "medically unnecessary" and illusory care; and "inflate, exaggerate, and misrepresent" their charges. (*Id.* at 256.) Plaintiffs argue that Defendants repeatedly and systematically engaged in a pattern of illegal behavior that injured them. Second, Plaintiffs advance a common law fraud claim, arguing that Defendants submitted thousands of fraudulent billings and charges on which Plaintiffs relied when making reimbursement payments to Defendants. (*Id.* at 273.) Finally, Plaintiffs advance a claim of unjust enrichment against Defendants, asserting that they were unfairly enriched as a result of allegedly false, improper, and unlawful acts. (*Id.* at 275.) For these claims, Plaintiffs seek $3,900,000.00 in damages.

Plaintiffs filed their original complaint (ECF No. 1) on November 16, 2017, naming eleven individuals and entities, including Defendants. Summons were properly issued to each named party on November 17, 2017. (ECF No. 3.) Plaintiffs dismissed their claims against the nine parties aside from the instant Defendants on January 22, 2018 and on June 12, 2018. (ECF Nos. 26 and 51.) Defendants failed to file an answer by January 2, 2018, the deadline set forth in the summons, at which point Plaintiffs filed a request for default. (ECF No. 23.) On January 4, 2018, the clerk of court entered default against Defendants. (*Id.*) Plaintiffs moved for default judgment on January 17, 2018. (ECF No. 25.) Defendants' counsel entered an appearance on February 5, 2018 and sought an extension to reply, which this Court granted on February 30, 2018. (ECF No. 30.) Defendants then timely filed a brief opposing Plaintiffs' motion for default judgment on February 20, 2018. (ECF No. 32.)

## II. STANDARD FOR DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55(b)(2) allows the Court, upon a plaintiff's motion, to enter default judgment against a defendant that has failed to plead or otherwise defend a claim for affirmative relief. The Court should accept as true all well-pleaded factual allegations in the complaint by virtue of the defendant's default except for those allegations pertaining to damages. *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. Apr. 7, 2008) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). The Court also does not adopt a plaintiff's *legal* conclusions because whether the facts set forth an actionable claim is for the Court to decide. *Doe v. Simone*, Civ. No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013).

While the decision to enter default judgment is left principally to the discretion of the district court, there is a well-established preference in the Third Circuit that cases be decided on the merits rather than by default judgment whenever practicable. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180–81 (3d Cir. 1984). Default judgment, and the dismissal that accompanies it, "must be a sanction of last, not first, resort." *Carter v. Albert Einstein Med. Ctr.*, 804 F. 805, 807 (3d Cir. 1986) (quoting *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 867 (3d Cir. 1984)). Consequently, the Court must address a number of issues before deciding whether a default judgment is warranted.

## III. DISCUSSION

### A. The Court's Jurisdiction

First, this Court must determine whether it has both subject-matter jurisdiction and personal jurisdiction over Defendants. *See U.S. Life Ins. Co. in N.Y.C. v. Romash*, Civ. No. 09-3510, 2010 WL 2400163, at *1 (D.N.J. June 9, 2010).

Here, the Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1332(a)(1) and § 1367. The amount in controversy exceeds $75,000 and Plaintiffs and Defendants are residents of different states, fulfilling the requirements of §1332. Additional claims that fail to meet the amount in controversy requirement are properly supplemental under § 1367. Therefore, this Court has subject-matter jurisdiction. Venue is also proper pursuant to 28 U.S.C. § 1391(b), as the Defendants are residents within the District of New Jersey, where a "substantial part of the events or omissions giving rise to the claim occurred."

### B. Entry of Default

Second, the Court must ensure that entry of default under Rule 55(a) was appropriate. Rule 55(a) directs the clerk of court to enter default when the party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise. . . ." In this case, Defendants were properly served with Plaintiffs' summonses on November 17, 2017 and failed to answer or defend the action by the date set by the Court, at which point the clerk appropriately issued the entry of default on January 4, 2018.

### C. Fitness of Defendants to be Subject to Default Judgment

Third, this Court must confirm that the defaulting parties are not infants or incompetent persons, or persons in military service exempted from default judgment. *See* Fed. R. Civ. P. 55(b)(2); 50 U.S.C.A. § 501 *et seq*. (2006) (codification of the Servicemembers Civil Relief Act of 2003). In this case, it appears to the Court that Defendants are not infants, incompetent, or active duty members of the United States military. Plaintiffs obtained a certificate from the United States Department of Defense Manpower Data Center indicating that Defendant Lipnack does not serve in the military. (Decl. of Gene Y. Kang, Ex. A.) Rule 55(b)(2) is satisfied.

### D. Plaintiffs' Causes of Action

Fourth, the Court must determine whether Plaintiffs' complaint states a proper cause of action against Defendant. In performing the inquiry into a cause of action, the Court accepts as true a plaintiff's well-pleaded factual allegations while disregarding its mere legal conclusions. *See DirecTv, Inc. v. Asher*, Civ. No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright & Miller, Federal Practice and Procedure § 2688, at 58–59 (3d ed. 1998)).

Whatever else they may be, Plaintiffs' causes of action are cognizable. Plaintiffs assert three separate claims against Defendants: (1) violation of the NJIFPA; (2) common law fraud; and (3) unjust enrichment. Plaintiffs maintain that Defendants engaged in a system of fraudulent referrals for "medically unnecessary, illusory, and otherwise unreimbursable healthcare services." (Repl. Br. at 10.) These illegitimate referrals, as alleged, violated not only the NJIFPA, but also constituted common law fraud. (*Id.* at 13.) As a result of a system of fraudulent referrals, Plaintiffs hold that Defendants were unjustly enriched at Plaintiffs' expense. (*Id.* at 18–19.)

As this Court finds, for other reasons below, that default judgment is inappropriate, it defers finding whether the allegations set forth in the complaint are sufficient to state a claim against Defendants. While it is true that the complaint offers much more than "labels and conclusions or a formulaic recitation of the elements of a cause of action," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted), the full scope of the claims within it are somewhat uncertain.

To put it simply: Plaintiffs play fast and loose with the requirements of the Federal Rules of Civil Procedure. Rule 8(c) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Yet this complaint may be fairly labeled sprawling and inscrutable; among its vices, it frequently incorporates previous references, leading

to computationally impossible statements. A model example may be found on page 275 in Count Fifteen, paragraph 674, which incorporates "each and every allegation in paragraphs 1 through 673 above." This is apparently inclusive of hundreds of sub-paragraphs and, indeed, all previous fourteen counts, which, of course, incorporate the previous counts, resulting in a logarithmic expansion of paragraphs as each count incorporates previous incorporations that themselves incorporated incorporations. Each successive count thus snowballs into a blizzard of theories, facts, allegations, and claims which must be shoveled away before the blob beneath the snowbank reveals itself as a car, house, or plausible insurance dispute.

This practice flouts Rule 8, which does not countenance enigma: "shotgun pleadings"—or snowball pleadings, as is the case here—are verboten. *See, e.g.*, *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (surveying and decrying the practice of "shotgun pleading" and its sundry forms, including where a complaint's counts incorporate by reference the allegations of previous counts, "leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions"); *Litwak v. Tomko*, Civ. No. 3:16-0446, 2017 WL 4151178, at *5 (M.D. Pa. Sept. 19, 2017) ("a pleading . . . that intermingles a wide number of claims based on a variety of legal theories . . . runs afoul of the Federal Rules."); *Lapella v. City of Atl. City*, Civ. No. 10-2454 (JBS/JS), 2012 WL 2952411, at *5 (D.N.J. July 18, 2012) ("By incorporating all preceding allegations into each count, Plaintiffs engage in shotgun pleadings that obfuscate her claims and defy the mandate of Rule 8, denying Defendants of the fullest extent of notice to which they are entitled."). At 279 pages, with additional attached exhibits of more than 1,140 pages, the complaint is a far cry from Rule 8(c)'s requirement of "short and plain statement." This is especially problematic here, as Third Circuit precedent requires this Court

7

to consider Defendants' meritorious defenses against Plaintiffs' complaint. Those defenses are seriously complicated by the state of the pleadings.

E. *Chamberlain* Factors

Under *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000), this Court must now consider three factors—(1) whether the defendant appears to have a meritorious defense, (2) whether denial of default would prejudice the plaintiff, and (3) whether a defendant's delay is due to culpable conduct—when deciding whether to enter default judgment against Defendants.[1]

The first factor weighs against the entry of default judgment. "The showing of a meritorious defense is accomplished when allegations of defendant's answer, if established at trial, would constitute a complete defense to the action." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (internal quotations and citation omitted). Defendants' opposition

---

[1] The applicability of these factors to a motion to *enter* default judgment is not immediately apparent. *Chamberlain* relied on *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194, (3d Cir. 1984) for the proposition that these three factors may be applied in the context of *entering* a default judgment, but *U.S. Currency* only used these factors for *setting aside* a default judgment. *Chamberlain* appears to have been the first Third Circuit opinion to have extended the *U.S. Currency* factors to this context, though several lower courts had previously taken the same approach. *See, e.g.*, *Metro Commercial Real Estate, Inc. v. Reale*, Civ. A. No. 95-2382 (ABB), 1995 WL 508207, at *1 (E.D. Pa. Aug. 24, 1995) (extending the test for the setting aside of default judgment to the entry of default judgment); *Stevens v. Wiggins*, Civ. A. No. 90-7038, 1991 WL 152960, at *1 (E.D. Pa. Aug. 6, 1991) (same). It is worth noting that *Chamberlain*'s approach has been called into question, though not overruled. Judge Rendell, concurring in *Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 50 (3d Cir. 2003), noted that *Chamberlain* appeared to have merged the analysis of *setting aside* a default judgment with the *entering* of one, and that "it makes little sense for a plaintiff to be required to demonstrate that the defendant does not have meritorious defenses" when moving for default judgment. *Hill*, 69 F. App'x at 53. Judge Ambro, writing for the majority in *Hill*, noted that several circuits employed significantly different tests. *Id.* And indeed, most other circuits employ different tests for the entering and setting aside of default judgments, in recognition of the different interests at play for each judicial action. *See generally* Wright & Miller, *supra*, § 2685 (listing factors used by different circuit courts for the entry of default judgment). Whatever the merits of these approaches, *Chamberlain*'s "meritorious defense" test places an unusual burden on a defendant when, as here, he opposes the entry of default judgment but must put up a substantive defense of his case before *any* motion practice or discovery begins.

brief sets forth four defenses to the allegations asserted by Plaintiff. In addition, Defendants' answer—attached to their opposition brief instead of being filed separately, as should be done—categorically denies 679 paragraphs of allegations in the complaint and sets forth 15 more defenses. The Court finds that they are of sufficient merit for the purposes of deciding whether to enter default judgment. Defendants raise several disputes of material fact (whose genuineness is impossible to determine at this time); contend they did not perform medically unnecessary procedures and "upcoding"; argue that they are entitled to Personal Injury Protection Arbitration proceedings pursuant to N.J. Stat. Ann. § 39:6A-5; argue that they did not violate the "Cody Law" pursuant to N.J. Stat. Ann. § 45:9-22.5; and deny violating the New Jersey Insurance Fraud Prevention Act, N.J. Stat. Ann. § 17:33A-1 *et seq.* To be sure, the instant Defendants are not blameless: they responded to this complaint tardily; their briefing is opaque and undeveloped; their refutations of the allegations brought against them are murky and conclusory. But given the diversity of disputes in this case, the millions of dollars at stake, and the complexity of the pleadings, it is simply inappropriate to enter default judgment when Defendants have not had an opportunity to refute the allegations against them. For this reason, many courts in this Circuit "have, while recognizing that [a] lack of a meritorious defense is, by itself, dispositive in the motion to vacate default judgment context, been reluctant to similarly hold in the entry of default context." *Nat'l Specialty Ins. Co. v. Papa*, Civ. No. 11-2798 (RMB/KMW), 2012 WL 868944, at *2 (D.N.J. Mar. 14, 2012) (citing cases). We find this factor weighs against default judgment. Plaintiffs may challenge the merits of Defendants' defenses at a later stage in proceedings.

The second factor also favors Defendants. "Delay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening [of] a default judgment entered at an early stage of the proceeding." *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance*

9

*Club, Inc.*, 175 F. App'x 519, 523–24 (3d Cir. 2006) (citing *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656–57 (3d Cir. 1982)). Although *Starlight Ballroom* addresses a different issue than the one the Court addresses today —i.e., the opening of a default judgment rather than the entry of one—*Chamberlain* and *Hill* hold that it is as applicable to the entry of a default judgment as it is to the vacation of a default judgment. Defendants have entered an appearance and have opposed this motion. Plaintiffs' delay in satisfaction, should they prevail, is not so prejudicial that it supports entering default judgment.

Finally, the Court must consider the culpability of the defaulting party. Culpable conduct "is conduct that is 'taken willfully or in bad faith.'" *Chamberlain*, 210 F.3d at 164 (citation omitted). "Negligence alone cannot sustain a default judgment"; willful, intentional, reckless or bad faith conduct is required. *Hritz*, 732 F.2d at 1183. There is no evidence of anything but, at most, negligence on the part of the Defendants' attorneys. Defense counsel admits that it was his and his office's failure to not "immediately enter an [sic] appearance and otherwise plead on [Defendants'] behalf." (Opp'n at 4.) Although defense counsel erred in not responding by the deadline, such a mistake is not imputed to the client, and it certainly doesn't rise above the level of simple negligence. *See Augusta Fiberglass Coatings v. Fodor Contracting,* 842 F.2d 808, 811 (4th Cir. 1988) (holding that an attorney's negligent failure to file an answer is not imputed to defendant); *Momah v. Albert Einstein Med. Ctr.*, 161 F.R.D. 304, 308 (E.D. Pa. May 8, 1995) (finding that counsel's neglectful failure to file a response to an amended complaint did not rise to a culpable level). This factor does not weigh in favor of entering default judgment either.

Thus, under Third Circuit precedent, the *Emcasco* factors weigh against entering default judgment. The Court therefore denies Plaintiffs' motion for the entry of default judgment.

## IV. VACATING DEFAULT

Defendants' motion to vacate the clerk's entry of default is defective: Local Civil Rule 7.2 requires that a motion be accompanied by a Notice of Motion as well as a brief. *See, e.g.*, *Bounasissi v. New York Life Ins. & Annuity Corp.*, Civ. No. 15-7585 (JBS/JS), 2016 WL 852483, at *2 (D.N.J. Mar. 4, 2016). But because it is in the interests of judicial economy and because Plaintiffs will not be prejudiced as the analysis is identical to that of whether to enter default judgment, the Court will entertain the request.

A district court may set aside an entry of default for good cause shown. *See* Fed. R. Civ. P. 55(c); *see also* Fed. R. Civ. P. 77(c) ("[T]he clerk's action may be suspended or altered or rescinded by the court upon cause shown."). In exercising its discretion to set aside a default, a district court must consider (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense, that is, whether the defendant's allegations, if established at trial, would constitute a complete defense to the action; and (3) whether the default was the result of the defendant's culpable conduct. *Dambach v. United States*, 211 F. App'x 105, 109 (3d Cir. 2006). Motions to set aside a clerk's default "are held to a more lenient standard." *Papa*, WL 868944, at *2. *See also Feliciano v. Reliant Tooling Co. Ltd.*, 691 F.2d 653, 656 (3d Cir. 1982) ("Less substantial grounds may be adequate for setting aside a default than would be required for opening a judgment"); *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) ("[T]he standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b)."); Wright & Miller, *supra*, § 2692 ("[T]he federal courts are willing to grant relief from a default entry more readily and with a lesser showing than they are in the case of a default judgment.").

The Court has already considered these factors in the context of whether to enter default judgment, pursuant to *Chamberlain*'s instructions, and have concluded the factors do not weigh in favor of entering default judgment. We likewise find that for the more lenient standard of whether to vacate the clerk's entry of default, the Court must do so, as Plaintiffs have shown the "good cause" required by Rule 55(c). We will therefore vacate the clerk's entry of default.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for default judgment is **DENIED** and Defendants' request to vacate the clerk's entry of default is **GRANTED**. An order follows.


Dated: August 6, 2018 　　　　　　　　　　　　　　/s Robert B. Kugler
　　　　　　　　　　　　　　　　　　　　　　　　ROBERT B. KUGLER
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge